THOMAS G. GOODWIN, *Libelant, versus* JANE GOODWIN.

The statutes of this State do not confer on the Supreme Judicial Court au-
thority to decree a dissolution of the bonds of matrimony between parties
who were married in a foreign country, if they have not cohabited in this
State after marriage, and only one of them has ever been a resident of the
State.

LIBEL of the husband for divorce from the bonds of matri-
mony for his wife's alleged desertion of him.

On EXCEPTIONS to the ruling of GOODENOW, J., at *Nisi Prius*,
that the libel does not present a case within the jurisdiction
of the Court, and that the same be dismissed.

The allegations contained in the libel sufficiently appear in
the opinion of the Court.

*M. H. Dunnell* argued for the libelant in support of the
exceptions.

The opinion of the Court was drawn up by

GOODENOW, J. — The parties were married in Manchester,
England, in the month of October, 1847. The libelant al-
leges that he came to this country in June, 1848, for the pur-
pose of establishing himself in business, and with the consent
of his wife, and according to a mutual agreement between
them, he sent her ample means to come to this country in
June, 1849, at which time she agreed and promised to come,
if he should furnish the means necessary to meet her expenses
in coming; yet, wholly regardless of this agreement, she has
refused to come, and, since the month of April, 1853, he has
been unable to ascertain her whereabouts, although he has
made diligent search for her; that ever since June, 1849, she
has wholly and absolutely refused to live with him, where-
fore, &c.

It does not appear that the parties were married in this
State, or cohabited here after marriage; but the contrary
appears. It does not appear that desertion is a sufficient
cause for divorce from the bonds of matrimony in England.

From the allegation in the libel, we are unable to order a notice on the wife, which would probably reach her. If the husband, by diligent search, has been unable to find her since 1853, we have no reason to suppose that a notice, if ordered by us, would find her.

The proceeding against her is one of grave importance. She should not be condemned and seriously affected in her most important rights, without an opportunity to be heard. She may not have understood the alleged mutual agreement precisely as her husband understands it. What private griefs she may have, we know not. She may fear to expose herself to the perils of the sea alone. She may not have received the necessary remittances from her husband, or her letters to him may have failed to reach their destination. We do not understand that the libelant has been back to England during the whole period of ten years, to make search for her.

It was held in *Harteau* v. *Harteau*, 14 Pick. 181, that the maxim "that the domicil of the wife follows that of the husband," is not applicable to cases of divorce, where the wife claims to act, and by law, to a certain extent, is allowed to act adversely to her husband.

"It is of importance," says the learned Chief Justic SHAW, "that such a question should be regulated, if possible, not by local law or local usage, under which the marriage relation should be deemed subsisting in one State and dissolved in another." * * "So many interesting relations, so many collateral and derivative rights of property, and of inheritance, so many correlative duties depend upon the subsistence of this relation, that it is scarcely possible to overrate the importance of placing it upon some general and uniform principle which shall be recognized and adopted in all civilized States." In this case, the Court refused to decree a divorce on the ground that it had not jurisdiction of the case. It appeared that the parties were married in Berkshire county, where the libel was depending, and resided there for several years after their marriage; then removed into the State of

New York, and there took up their residence, where the alleged desertion and neglect took place.

In *Brett* v. *Brett*, 5 Met. 235, DEWEY, J., says: "while we would give full force and effect to the statute, in cases of our own citizens, and for causes occurring within the Commonwealth, it is equally the imperative duty of the Court to abstain from interfering with the marriage relations existing between persons having a foreign domicil, and from taking cognizance of an application for the dissolution of the bond of matrimony for *causes occurring within another jurisdiction*, to which the parties are more properly amenable."

It is not alleged that the libelee ever had a residence in this country, either before or since the marriage. She could not have been guilty of deserting her husband contrary to the law of this State, if she never resided here. The statute of 1850, c. 171, § 1, gave the wife, as libelant, a privilege, as to the jurisdiction of the Court, which she had not before its enactment. By the R. S. of 1857, the Court has jurisdiction " if the parties were married in this State, or cohabited here after marriage." R. S., c. 60, § 2.

*The exceptions must be overruled. Petition dismissed.*

TENNEY, C. J., HATHAWAY, CUTTING, MAY, and DAVIS, J. J., concurred.